Argued February 21, appeal dismissed, remanded April 8, 1974

STATE ex rel DEPARTMENT OF REVENUE,
*Respondent, v.* PARKER (No. 1884),
*Appellant.*
521 P2d 38

*Howard R. Lonergan,* Portland, argued the cause for appellant. With him on the briefs was James C. Niedermeyer, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant, father of a mentally retarded child residing at Fairview Hospital and Training Center since September 1969, appeals from a judgment summarily entered without trial, sentencing him to 30 days in jail for contempt.

ORS 179.630 (1) provides:

"(1) Relatives of a person at a state institution are liable for the care and maintenance of such person under ORS 179.620, according to their respective abilities to pay, as follows:

"* * * * *

"(c) The parents for their children.

"* * * * *."

Prior to the filing of this proceeding in January 1973, defendant had made but two $50 payments and had refused to furnish financial information necessary to enable the Department of Revenue (ORS 179.610 (1)) to make a determination of what, if anything, the parents could pay.

ORS 179.640 (3) provides in part:

"(3) If the department is unable to determine

to its satisfaction whether or not the person at the state institution, his estate or responsible relatives are financially able to and will contribute towards the care and maintenance of such person, the department may request a court determination of the question in the manner provided in subsection (4) of this section. * * *"

Accordingly, the district attorney for Columbia County instituted a proceeding[1] in the circuit court for that county at the request of the Department of Revenue.

The defendant was cited and appeared with counsel. When called as a witness, he testified under oath:

"I refuse to answer any questions pertaining to my finances."

---

[1] ORS 179.640 (4) provides:

"(4) (a) Subject to paragraphs (b) and (c) of this subsection, upon request of the department or the person against whom the department order was made, the probate court of the county from which the person was committed or the probate court of the county of which such person was a resident when admitted to the state institution or the probate court of the county in which the responsible person resides shall cause a citation to be issued by the clerk of the court and served by the sheriff of the county, citing the person at the state institution and any guardian, husband, wife, parents and children of such person to appear in court before such judge at a time and place designated in the citation and show cause why a court order should not be entered adjudging that the person or his estate or responsible relatives, or any combination of them, are financially able to pay for the care and maintenance of such person at the state institution.

"(b) Notwithstanding any other provision of this section, if the person at the state institution was committed to the state institution, the probate court for the county where the commitment was made has exclusive jurisdiction under this section.

"(c) Subject to paragraph (b) of this subsection, if two or more courts are entitled to exercise jurisdiction under this section, the court first taking jurisdiction shall retain jurisdiction to the exclusion of every other court."

We note that the liability of relatives under ORS 416.010 to 416.270 was removed by Oregon Laws 1973, ch 334, § 1 (4).

Despite repeated and careful explanation by the court concerning the purpose of the hearing and warnings clearly advising the defendant that if he persisted in his refusal to answer he would be liable for contempt, the defendant continued flatly to refuse, and stated to the judge:

"I'm not going to give you any information pertaining to my finances."

Finally, the following transpired:

"THE COURT: Well, of course, if a person refuses to answer questions, then—and if it's their duty to answer questions, and they refuse then they're in contempt of court, you see.

"A [By defendant] I realize that.

"THE COURT: You realize that? And I would find that at this moment that you have a duty to answer the questions propounded to you relative to your financial ability or nonability to pay. You have stated twice or three times that you are not going to answer any questions, and do I assume that that's final?

"A Yes, sir.

"THE COURT: That's final? Well, the court finds you in direct contempt * * *."

The court subsequently sentenced the defendant to 30 days' confinement. Oral notice of intention to appeal was given by the defendant, and the court released the defendant on his own recognizance pending the appeal.

On this appeal defendant asserts in his brief that the sentence was in excess of the maximum allowed by law, and, second, that the whole proceeding was void because:

"Here there was no citation to Daniel Parker * * * nor appointment of or citation to any guard- .

ian to represent him * * * and the trial court specifically stated it was not going to allow the statutory subrogation against Daniel Parker * * *."

In *Rust v. Pratt*, 157 Or 505, 72 P2d 533 (1937), *appeal dismissed* 303 US 621, 58 S Ct 648, 82 L Ed 1084 (1938), the Oregon Supreme Court held that a refusal of a witness to answer a question after being instructed so to do by the court was a direct contempt and in violation of ORS 33.010 (1) (j), then 8-501 Oregon Code 1930. The statute states:

"The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(j) Disobedience of a subpena duly served, or refusing to be sworn or answer as a witness.

"* * * * * *"

ORS 33.030[2] authorizes the summary punishment of direct contempt.

ORS 33.020 provides:

"(1) Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in paragraphs (a) and (b) of subsection (1) of ORS 33.010, or in subsection (1) of ORS 1.240, it must appear that the right or remedy of a party to an action, suit or proceeding was defeated

---

[2] ORS 33.030 provides:

"When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed."

or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100."

■ It is obvious that by the flat refusal of the defendant to answer any questions pertaining to his finances "the right or remedy of a party to an action, suit or proceeding was defeated" and greatly prejudiced the very purpose of the proceeding.

The punishment imposed, therefore, was clearly within the power of the trial court.

The other contention is that since Daniel Parker, the mentally retarded son, was not cited to appear, the father was denied such right, if any, he might have had to assert a claim of subrogation against his son. We pointed out initially that in the trial court the father at no time suggested nor does he here contend that his minor son had funds or assets of any kind available for his own support. Nor does the father contend nor the record show that he had ever sought to have himself or anyone else appointed as guardian of the estate of the boy.

ORS 179.635 (4) provides:

"(4) Notwithstanding subsections (1) and (3) of this section, the liability of parents of a child resident of a state institution for the mentally deficient who refuse to supply the department with information necessary to determine their ability to pay under ORS 179.640 shall be for the full cost of care and maintenance of the child until such time as a determination is made under ORS 179.640 by a court of competent jurisdiction."

ORS 179.640 (5) provides:

"(5) The court may direct subpenas to be issued to any witness to appear and adduce evidence upon

the trial of the matter for the purpose of determining the financial ability of the person at the state institution, his estate or his responsible relatives to pay. * * * All such persons shall be examined as witnesses under oath for the purpose of determining the financial ability of the person at the state institution, his estate or responsible relatives, to pay for his care and maintenance in the state institution."

The purpose of the examination of the father was to determine his financial ability to pay for his son's care at a covered state institution. The proceeding was not related to the estate, if any, of the boy, nor in any event to a determination of any claimed subrogation right. Its purpose was simply to enable a determination of the ability to pay of any person named in the statute.

■ No attempt under this proceeding was made to impose any liability upon the son or his estate. He was not, therefore, a necessary party to this proceeding⑨ brought against the father only.

Thus the proceeding was not, as defendant contends, void. In view of the fact that we find that the proceedings here were not void we do not reach the question of what the result would have been had we concluded otherwise.

The appeal is dismissed and the matter remanded to the trial court for such further proceedings as it may find appropriate.

---

⑨ ORS 179.635 (5) provides:

"Nothing in subsection (1), (2) or (3) of this section is intended to affect the liability of the resident of a state institution or his estate for the cost of his care and maintenance while at the institution."